IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

| | |
|---|---|
| Mary Letney,<br><br>                      Plaintiff,<br><br>vs.<br><br>Academy Sports and Outdoors,<br><br>                      Defendant. | Case No.: 1:22-cv-00091-JRH-BKE |

**Academy Ltd.'s Response to the Court's Order
About the Amount in Controversy**

Defendant Academy, Ltd. d/b/a Academy Sports + Outdoors ("Academy"), improperly designated in the Complaint as Academy Sports and Outdoors, removed this action under the Court's diversity jurisdiction. Although Plaintiff lists approximately $14,000 in her Complaint, her $250,000 pre-litigation settlement demand discussed below belies such a meager claim. In a detailed December 2021 letter, Plaintiff: (1) claimed nearly $27,000 in itemized damages supported by 186 pages of medical records, (2) alleged she had been advised by her doctor that she would require a second surgery to replace her knee, and (3) claimed ongoing pain and suffering from the alleged incident leaving her to live a "life of misery." Her Complaint seeks all of these categories of damages on top of lost past and future wages, attorneys' fees, and punitive damages.

When each of the types of damages in the Complaint and the Settlement Demand are taken as a whole, common sense and reasonable inferences confirm more than $75,000 is at issue here.

**Factual and Procedural Background**

Plaintiff sues after an alleged slip and fall at an Academy store in Evans, Georgia. (Compl. ¶ 2, ECF No. 1-1.) Plaintiff claims she fell and suffered serious injuries while shopping. (*Id.* ¶ 3.)

A year following the alleged incident, Plaintiff's counsel sent Academy a detailed, four-page Settlement Demand asserting that Plaintiff suffered serious injuries to her knee and attached 186 pages of medical records.[1] (**Exhibit 1**, Settlement Demand, December 30, 2021.)[2] Plaintiff contends that the severity of her injury required her to undergo surgery to repair the tear in her medial meniscal root. (*Id.* at 3.) She also claims her doctor reported she was "going to lose a lot of medial meniscus and will likely start the perception of breakdown on the medial side of the knee." (*Id.*) Due to this, Plaintiff alleges her treating physician told her she would need a knee replacement and future treatment. (*Id.*)

The Settlement Demand itemized her medical expenses of $26,926.09. (*Id.* at 2–3.) But the Settlement Demand alleges that Plaintiff will need future medical care, the pain in her knee has increased since the surgery, and she remains unable to play with her grandchildren, walk without a limp and cane, or attain anywhere near the quality of life that she had before the alleged incident. (*Id.* at 3.) Plaintiff even goes so far as to allege her injuries have condemned her "to a life of misery and ensured that the rest of her days will be spent in pain and without the ability to amble with any degree of comfort." (*Id.*) Based on these allegations, Plaintiff tendered a demand in the amount of $250,000. (*Id.*)

Plaintiff's Complaint tracks the allegations made in her Settlement Demand.[3] Plaintiff sues under a negligence theory, seeking compensatory damages, attorneys' fees and costs under

---

[1] To avoid publicly filing Plaintiff's full medical history, Academy has only produced the records relevant to Plaintiff's potential future surgery and the associated billing records.

[2] The Court may consider the Settlement Demand because Plaintiff specifically references it in paragraph 13 of the Complaint and its detailed assessment of the case confirms the amount in controversy exceeds the jurisdictional threshold. *Hi-Tech Pharms., Inc. v. HBS Int'l Corp.*, 910 F.3d 1186, 1189 (11th Cir. 2018); *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1097 (11th Cir. 1994).

[3] The main difference is that Plaintiff pleads medical damages "*in excess of* $14,274.84." (Compl. ¶ 11 (emphasis added).) This amount is $13,000 less than the amount in the Settlement Demand.

2

O.C.G.A. §§ 13-6-11 and 9-11-68(e), past and future lost wages, as well as pain and suffering. (Compl. ¶¶ 15–17.) Plaintiff also seeks punitive damages. (*Id.* ¶ 18.)

Although Academy had concerns about the validity of service of process, it timely removed this case last month out of an abundance of caution, alleging diversity jurisdiction under 28 U.S.C. § 1332. (Notice of Removal at 2–4, ECF No. 1.) It has timely answered, preserving its right to contest the validity of Plaintiff's service. (Ans., ECF No. 6.) Shortly after removal, this Court ordered Academy to provide sufficient evidence that the jurisdictional amount in controversy exceeds $75,0000. (Order, ECF No. 4.)

## Standard of Review

District Courts have diversity jurisdiction where the amount in controversy exceeds $75,000. 28 U.S.C. § 1332. Defendants need only establish by a "preponderance of the evidence that the amount in controversy exceeds the jurisdictional requirement." *Williams v. Best Buy Co.*, 269 F.3d 1316, 1319 (11th Cir. 2001). Put another way, defendants have a low bar for removal: establishing the "amount in controversy *more likely than not* exceeds" $75,000. *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 752 (11th Cir. 2010) (quoting *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1356–57 (11th Cir. 1996)). Courts must analyze whether defendants have met this low threshold by applying the familiar pleading standard for a complaint in federal court. *Roe v. Michelin N. Am., Inc.*, 613 F.3d 1058, 1062 n.5 (11th Cir. 2010) (citing *Ellenburg v. Spartan Motor Chassis, Inc.*, 519 F.3d 192, 199 (4th Cir. 2008)).

The amount is controversy "is an estimate of how much will be put at issue during the litigation[.]" *S. Fla. Wellness, Inc. v. Allstate Ins. Co.*, 745 F.3d 1312, 1315 (11th Cir. 2014). "Courts may use their judicial experience and common sense in determining whether the case stated in a complaint meets federal jurisdictional requirements." *Roe*, 613 F.3d at 1061. Courts

may also rely on "evidence combined with reasonable deductions, reasonable inferences, or other reasonable extrapolations." *Pretka*, 608 F.3d at 754. "The point is that a removing defendant is not required to prove the amount in controversy beyond all doubt or to banish all uncertainty about it." *Id*.

## Argument

Plaintiff's claims in her Complaint as explained by her Settlement Demand confirm more than $75,000 is in controversy here. As an initial matter, the Eleventh Circuit has expressly recognized that a pre-litigation demand letter is an "other paper" relevant to the trial court's determination of the amount in controversy. *See Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1097 (11th Cir. 1994); *Lowery v. Alabama Power Co.*, 483 F.3d 1184, 1213 n.62 (11th Cir. 2007) (quoting 28 U.S.C. § 1446(b)). Though the weight given to a particular demand letter varies, settlement offers that provide "specific information . . . to support [plaintiffs'] claim for damages" and suggest plaintiffs are "offering a reasonable assessment of the value of [their] claim," are entitled to more weight. *Golden Apple Mgmt. Co. v. Geac Computers, Inc.*, 990 F. Supp. 1364, 1368 (M.D. Ala. 1998). Coupled with the fact that Plaintiff specifically references the Settlement Demand in her Complaint, (Compl. ¶ 13), the Court may properly consider the detailed factual statements from the Settlement Demand here.

When reading the Complaint and Settlement Demand together, the damages Plaintiff seeks exceed the $75,000 jurisdictional threshold. To be sure, Academy denies Plaintiff is entitled to the damages she seeks, or any relief for that matter. But Plaintiff's "likelihood of success on the merits is largely irrelevant to the court's jurisdiction because the pertinent question is what is in controversy in the case, not how much the [plaintiff is] ultimately likely to recover." *Pretka*, 608 F.3d at 751 (quoting *Amoche v. Guarantee Tr. Life Ins. Co.*, 556 F.3d 41, 51 (1st Cir. 2009)). What

matters here is that it is "*more likely than not*," *Pretka*, 608 F.3d at 752, that Plaintiff has put more than $75,000 at issue here, S. *Fla. Wellness*, 745 F.3d at 1315.

      **A.**     **Past and Future Medical Expenses**

Although Plaintiff's Complaint makes a claim for roughly $14,000 in medical expenses, (Compl. ¶ 11), the Settlement Demand and the medical and billing records supplied with the demand show that her past medical expenses were nearly $13,000 more than she alleges. (*See* Ex. 1, Settlement Demand.) As a result, the medical expenses incurred by Plaintiff relevant to the Court's determination of the amount in controversy total nearly $27,000. (*Id.*) This is especially true given Plaintiff's attempt to plead damages "in excess" of this amount, which courts have recognized as insufficient to defeat removal. *Troupe v. C & S Wholesale Grocers, Inc.*, No. 5:09-CV-00098(CAR), 2009 WL 1938787, at *2 (M.D. Ga. July 2, 2009) (finding removal was proper where plaintiff sought medical damages "in excess" of $13,637, plus future medicals, and punitive damages).

Moreover, the $27,000 in medical expenses demanded by Plaintiff are only for expenses through December 2021. (Ex. 1, Settlement Demand at 1.) Plaintiff claims her medical issues have not been fully resolved to date. (*Id.* at 3.) According to the Settlement Demand, she supposedly continues to suffer pain in her knee that may permanently impair her ability to walk. (*Id.* at 3.) She also claims to have been advised by her doctor that she will need to undergo yet another surgery soon—this time a complete knee replacement rather than an arthroscopic repair. (*Id.*)[4] Likely for this reason, Plaintiff alleges she has incurred "in excess" of $14,000 in medical

---

[4] According to a study performed by Blue Cross Blue Shield, the cost for a total knee replacement procedure ranged from $11,317 to $69,654, with the market average of $31,124. (**Exhibit 2**, A Study of Cost Variations for Knee and Hip Replacement Surgeries in the U.S., BlueCross Blue Shield (Jan. 21, 2015).)

expenses, (Compl. ¶ 11), and seeks damages for "future treatment expenses." (Compl. ¶ 16.) Accordingly, Plaintiff's medical expenses allegedly resulting from the purported incident, assuming she only has the knee replacement surgery advised by her doctor and no additional treatment, approach $58,000, at a minimum.

### B.     Punitive Damages

The amount Plaintiff puts at issue does not just stop at $58,000, though. She also makes a claim for punitive damages. Just like other types of damages, the Court must consider punitive damages when determining whether the jurisdictional threshold is met. *Holley Equip. Co. v. Credit All. Corp.*, 821 F.2d 1531, 1535 (11th Cir. 1987). "The standard for ignoring a claimed element of damages is quite high: When determining the jurisdictional amount in controversy in diversity cases, punitive damages must be considered, unless it is apparent to a *legal certainty* that such cannot be recovered." *Parker v. Exterior Restorations, Inc.*, No. 21-cv-0425-WS-B, 2022 WL 2532171, at *4 (S.D. Ala. July 7, 2022) *(*quotations and citations omitted).

Under Georgia law, punitive damages may be awarded if it is proven by clear and convincing evidence that a defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences. O.C.G.A. § 51-12-5.1. Although Georgia caps claims for punitive damages at $250,000, Georgia appellate courts have rejected the notion that punitive damages must necessarily bear some relationship to the actual damages awarded by the jury. *Fassnacht v. Moler*, 358 Ga. App. 463, 480, 855 S.E.2d 692, 707 (2021).

In her Complaint, Plaintiff asserts that Academy's employee was in the area and aware of the potential danger posed by the supposedly sticky floor and recklessly left the hazard in place, causing Plaintiff's alleged injuries. (Compl. ¶¶ 6, 18.) Thus, Plaintiff alleges, she is entitled to

6

punitive damages. (Compl. at 4, ¶ (c).) While Academy adamantly denies that Plaintiff can prove that a punitive damages award is supported in this case, even using a small 5:1 ratio, the claimed damages here would far exceed the amount in controversy requirement. *See Lawrence v. Direct Mtg. Lenders Corp.*, 254 Ga. App. 672, 675 (3), 563 S.E.2d 533 (2002) (upholding punitive damages award where ratio of punitive to compensatory damages was 33.3); *King v. Towns*, 102 Ga. App. 895, 904 (5), 118 S.E.2d 121 (1960) (upholding punitive damages award where ratio of punitive to compensatory damages was 12.9 to 1).

    **C.**    **Pain and Suffering**

Pain and suffering can also be considered by this Court in determining the amount in controversy. *See Brito v. Harris*, No. CV 322-038, 2022 WL 2835852, at *1 (S.D. Ga. July 20, 2022). Under Georgia law, a litigant may argue the worth or monetary value of pain and suffering to the jury assuming it conforms to the evidence presented at trial. O.C.G.A. § 9-10-184. Accordingly, Georgia's statute is broad and allows the jury to determine damages without a monetary cap. *Id.*

Given the breadth of pain and suffering potentially available to litigants, the Southern District of Georgia recently found a general claim for pain and suffering sufficient to satisfy the amount-in-controversy requirement when the plaintiff's testimony showed she suffered significant pain. *See Brito*, 2022 WL 2835852, at *2. There, the plaintiff's state-court complaint did not reveal the amount in controversy, though the balance of the record, including discovery responses, confirmed the amount-in-controversy requirement had been met. *Id.* Even still, the court conducted an independent inquiry about the amount in controversy to confirm it had jurisdiction, relying on Plaintiff's testimony that she "continued to have 'horrible pain' in her left hand every day, and she even rated the pain in her left low back and her left foot a nine out of ten." *Id.* at *2.

The court found that this testimony "certainly supports a claim for pain and suffering," and that the jurisdictional threshold had been exceeded even without a sufficient monetary amount being pled in the complaint. *Id.*

Here, like the plaintiff in *Brito*, Plaintiff alleges in her Settlement Demand that the pain in her knee has increased since her surgery, and she remains unable to do the activities she did before the alleged incident at issue. (Ex. 1, Settlement Demand at 3.) She claims she must undergo a second surgery, must now use a cane, and walks with a limp. (*Id.*) She alleges she cannot attain anywhere near the quality of life she had before the alleged incident, and she contends her life is now a misery. (*Id.* at 3.) Given these specific allegations, Plaintiff's claim for pain and suffering damages pushes the amount in controversy over the $75,000 threshold such that the Court has jurisdiction here.

### D. Attorneys' Fees and Lost Wages

Attorneys' fees may also be considered when calculating the amount in controversy if attorneys' fees are recoverable under statute. *Hall v. Travelers Ins. Co.*, 691 F. Supp. 1410 (N.D. Ga. 1988); *see also Vacca v. Meetze*, 499 F. Supp. 1089, 1091 (S.D. Ga. 1980). Plaintiff has made claims for attorney's fees under two separate statutes: O.C.G.A. § 9-11-68(e) and O.C.G.A. §13-6-11. (Compl. ¶¶ 15,17.) As a result, the Court may consider these purported damages when determining the amount in controversy.

Plaintiff also makes a claim for past and future lost wages, which may also be counted towards the amount in controversy. *See Brito*, 2022 WL 2835852, at *2. Plaintiff contends her injuries have significantly affected her standard of living. (Ex. 1, Settlement Demand at 3.) Therefore, it would be reasonable to assume that her lost wages are significant. *Id.*

Although Plaintiff fails to plead the specific value of these alleged damages, this should not be grounds for remand. Plaintiff should not be rewarded with a finding that Academy cannot establish the jurisdictional amount based on her own failures to plead or allege these amounts in her Complaint or demand. *Brito*, 2022 WL 2835852, at *2. Plaintiff's purposeful pleading of an unspecified amount of damages can be interpreted as easily as a ploy to avoid removal as it can an implication that the amount in controversy is below the jurisdictional threshold. *Id.* This is especially true considering Plaintiff under-pled her medical damages by nearly $13,000 from the amount claimed in her Settlement Demand. *Id.*[5]

## Conclusion

When invoking removal jurisdiction, the "law does not demand perfect knowledge or depend any less on reasonable inferences and deductions than we all do in everyday life." *Pretka*, 608 F.3d at 754. Applying common sense and reasonable inferences to Plaintiff's allegations and her pre-litigation settlement demand confirms that Plaintiff seeks more than $75,000 in damages from Academy in this case. For this reason, Academy has shown by a preponderance of the evidence that the Court has diversity jurisdiction under 28 U.S.C. § 1332.

**[Signature on following page.]**

---

[5] If the Court still has concerns about the value of these two types of damages, it may order jurisdictional discovery on her salary, the wages allegedly lost, and how she has agreed to compensate her attorney for this case. *See Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 n.13 (1978) ("[W]here issues arise as to jurisdiction or venue, discovery is available to ascertain the facts bearing on such issues."). Indeed, the Eleventh Circuit's "own precedent holds that a plaintiff who chooses a federal forum 'should be given the opportunity to discover facts that would support . . . allegations of jurisdiction' and ordering 'dismissal without affording the plaintiff any opportunity to proceed with reasonable discovery [is] premature and an abuse of the court's discretion.'" *Pretka*, 608 F.3d at 774–75 (Pryor, J., concurring) (quoting *Majd–Pour v. Georgiana Cmty. Hosp., Inc.*, 724 F.2d 901, 903 (11th Cir. 1984)).

                            NELSON MULLINS RILEY & SCARBOROUGH LLP

                          By: */s/ Abigail C. Castleberry*

                              Abigail C. Castleberry (Admitted Pro Hac Vice)
                              Georgia Bar No. 696335
                              E-Mail: abigail.castleberry@nelsonmullins.com
                              Lucas A. Westby
                              Georgia Bar No. 594008
                              E-Mail: lucas.westby@nelsonmullins.com
                              201 17th Street NW, Suite 1700
                              Atlanta, GA 30363
                              (404) 332-6000

                              Matthew A. Abee (Admitted Pro Hac Vice)
                              Federal Bar No. 11747
                              E-Mail: matt.abee@nelsonmullins.com
                              1320 Main Street / 17th Floor
                              Columbia, SC 29201
                              (803) 799-2000

                          *Attorneys for Academy, Ltd.*

Atlanta, Georgia
August 3, 2022

# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF GEORGIA
# AUGUSTA DIVISION

| | |
|---|---|
| Mary Letney,<br><br>    Plaintiff,<br><br>vs.<br><br>Academy Sports and Outdoors,<br><br>    Defendant. | Case No.: 1:22-cv-00091-JRH-BKE |

### Certificate of Service

I certify that on August 3, 2022, I electronically filed **Academy Ltd.'s Response to the Court's Order About the Amount in Controversy** with the Court using the CM/ECF system, which will serve a copy to the following counsel of record:

Amir Nowroozzadeh
Monge & Associates
8205 Dunwoody Place, Building 19
Atlanta, Georgia 30350
amir@monge.lawyer

NELSON MULLINS RILEY & SCARBOROUGH LLP

By: */s/ Abigail C. Castleberry*
  Abigail C. Castleberry (Admitted Pro Hac Vice)
  Georgia Bar No. 696335
  E-Mail: abigail.castleberry@nelsonmullins.com
  Lucas A. Westby
  Georgia Bar No. 594008
  E-Mail: lucas.westby@nelsonmullins.com
  201 17th Street NW, Suite 1700
  Atlanta, GA 30363
  (404) 332-6000

  Matthew A. Abee (Admitted Pro Hac Vice)
  Federal Bar No. 11747
  E-Mail: matt.abee@nelsonmullins.com
  1320 Main Street / 17th Floor
  Columbia, SC 29201
  (803) 799-2000

August 3, 2022      *Attorneys for Academy, Ltd.*